IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

JULIE TAYLOR,

            Plaintiff,

     v.

VIRTUA HEALTH, INC., et al.,

           Defendants.

HONORABLE JEROME B. SIMANDLE

Civil Action No. 05-4271 (JBS)

**OPINION**

**APPEARANCES:**

Michael H. Berg, Esq.
BERG & PEARSON, PC
59 North Broad Street
Woodbury, NJ 08096
    Attorney for Plaintiff

Kristine Grady Derewicz, Esq.
LITTLER MENDELSON, PC
One Gateway Center
Third Floor
Newark, NJ 07102-5311
    Attorney for Defendants Virtua Health, Inc. and Wendy Cooper

**Simandle, District Judge:**

## I.   INTRODUCTION

This matter is before the Court on cross motions for summary judgment.  The case arises out of Defendants Virtua Health and Wendy Cooper's decision to terminate Plaintiff Julie Taylor's employment with one of Virtua's New Jersey hospitals in October 2004.  Plaintiff claims, generally, that Defendants discriminated against her because of a disability in violation of the New Jersey Law Against Discrimination ("NJLAD" or "LAD") and violated

her rights under the federal Family Medical Leave Act ("FMLA").

Defendants moved for partial summary judgment on Counts I, II, III, IV and V of the Complaint.  Count I alleges that Defendants wrongfully terminated Plaintiff because she had gallstones and needed gallstone surgery, in violation of the NJLAD; Count II alleges that Defendants failed to provide Plaintiff the reasonable accommodation of time off from work to get surgery, in violation of the NJLAD; Count III alleges that Defendants retaliated against Plaintiff because she requested an accommodation, in violation of the NJLAD, N.J. Stat. Ann. § 10:5-12(d); Count IV alleges that Defendants failed to provide Plaintiff time off for a serious medical condition, in violation of Plaintiff's rights under the FMLA, 29 U.S.C. § 2615; and Count V alleges that Defendants retaliated against Plaintiff for requesting and taking time off from work, in violation of the FMLA, 29 U.S.C. § 2615 (a), as implemented by 29 C.F.R. § 825.220.

Plaintiff opposed and cross-moved for summary judgment on Count IV, the claim that Defendants failed to provide Plaintiff time off for a serious medical condition in violation of the FMLA, and on Count VI, a claim under New Jersey law for Defendants' alleged failure to adhere to its contractual leave policy.  Defendants then moved for summary judgment on Count VI, as well.

## II.  FACTS

The following facts are not in dispute.  Defendant Virtua Health operates the hospital at which Plaintiff was employed as a technician.  On August 11, 1997, Virtua hired Plaintiff Julie Taylor and assigned her to the Medical/Surgical Unit.  Her supervisor since 2002 was Defendant Wendy Cooper, Nurse Manager of the Medical Surgical Unit.

Virtua's managers, including Ms. Cooper, are responsible for monitoring employees' absences and tardiness.  Typically, an employee receives verbal counseling after five instances of absence or lateness, a written Performance Improvement Agreement ("PIA") after seven instances, and may be fired after eight instances in a "rolling calendar year."

Plaintiff had a recent history of absences and lateness. From January to June 2003, Plaintiff was absent on eight occasions and was late twice.  Ms. Cooper "verbally coached" Plaintiff about these issues in June 2003.  On August 27, 2003, after Plaintiff called out of work, Defendant Cooper issued her a written PIA, which made clear that Plaintiff was obligated to arrive at work by 6:45 a.m. on her scheduled work days. Plaintiff signed this agreement and acknowledged, "I understand that if I am having attendance-related issues that might relate to potential FMLA regulations, I must contact the Employee Service Center."  Plaintiff admits that she deserved to receive

this PIA based on her attendance record.

In Defendant Cooper's 2003 performance evaluation of Plaintiff, Cooper reiterated that Plaintiff's punctuality and attendance needed improvement.  In response, Plaintiff wrote a comment on her evaluation indicating that her attendance problems were related to "serious family problems" and her own "panic attacks."  There is no indication that Virtua investigated whether Plaintiff's absences were related to FMLA qualifying reasons.  Rather, Plaintiff apologized and promised that she would improve in the year to come.

However, Plaintiff's poor attendance continued in 2004. Therefore, on June 27, 2004, Cooper issued Plaintiff another written PIA, this one indicating that if Plaintiff's performance did not improve, she would be terminated.  Plaintiff signed this PIA, too.  Plaintiff understood that further problems with attendance and lateness could lead to losing her job.  As part of Virtua's disciplinary protocol, Plaintiff developed a plan to prevent coming into work late.  That plan did not indicate that any of her lateness was due to a serious medical condition of Plaintiff or a family member.

Nevertheless, Plaintiff was absent an additional seven days between July 1 and September 30, 2004.  On two days Plaintiff indicated that she was "sick" when she called, on four days she indicated she was unable to come to work because of vertigo, and

one day she never reported for work or called out sick.

Plaintiff was expected to report to work on October 12, 2004.  The facts surrounding her absence for that date are in dispute.  Therefore, the Court must view them in the light most favorable to Plaintiff when considering Defendants' motion for summary judgment and in the light most favorable to Defendants when considering Plaintiff's motion.

Defendants claim that at 3:30 a.m. on October 12, Plaintiff telephoned the night supervisor and informed her that she would not be reporting to work because she was suffering from migraine headaches.  At 8:00 a.m. Defendant Cooper learned that Plaintiff had called out sick and decided to investigate Plaintiff's absences since her last PIA.  Cooper discovered that October 12 was Plaintiff's eighth absence since her June PIA and therefore decided to terminate Plaintiff's employment.

Defendants claim that Cooper then went to the staffing office and removed Plaintiff's name from the October 13 master schedule.  Ms. Cooper claims she called Plaintiff at home on October 12, told her not to report to work on October 13, and scheduled a 10:00 a.m meeting with Plaintiff instead, to discuss her absenteeism.  Defendants claim that Plaintiff again called out sick on October 13 and told the nursing supervisor that she was going to be out on medical leave.  Plaintiff did not report to her 10:00 a.m. meeting.

On the other hand, Plaintiff claims that when she became ill during the morning hours of October 12, she quickly contacted Virtua to advise her employer that she would be missing work because of a severe gallbladder attack, that she had taken Percocet to alleviate the pain, as prescribed, and was therefore unable to drive.  While Plaintiff admits that she had eight absences since June at that time, she disputes the timeline for Defendants' decision to terminate her.  Plaintiff testified that Defendant Cooper called her later in the day on October 12 to determine whether she was planning to come to work on the 13th.  During that conversation, Plaintiff claims, she told Cooper she was having gallbladder problems and intended to take a medical leave of absence.  Plaintiff claims Cooper said that was "OK" and that Plaintiff should provide medical documentation.

The next day, Plaintiff claims, she had a conversation with Virtua's human resources department who explained how to formally request leave.  Ms. Pat Nelson, one of Virtua's human resources specialists, whom it designated pursuant to Fed. R. Civ. P 30(b)(6), testified that Virtua did not designate any leave as FMLA leave unless the employee specifically requested time off pursuant to the FMLA (Nelson Dep. at 74 in Pl.'s Ex. 17), even though Plaintiff was seeking leave that "may have been covered by the Family Medical Leave Act," (id. at 90-91).

Plaintiff has come forward with evidence that she was

suffering from a serious medical condition that caused her to miss work on October 12 and 13, 2004.  Defendants have generally indicated that they do not have sufficient information to determine whether that is true.  On Plaintiff's motion for summary judgment, Defendants must do more than rest on rote denials of material facts.

## III. SUMMARY JUDGMENT STANDARD

A court may grant summary judgment when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir. 1983).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  See id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.[1]  The summary judgment standard does not change when, as here, the

---

[1] Moreover, a non-moving party must do more than rely only "upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985) (citation omitted); see Liberty Lobby, 477 U.S. at 249-50.  Thus, if the non-moving party's evidence is a mere scintilla or is "not significantly probative," the court may grant summary judgment.  Liberty Lobby, 477 U.S. at 249-50; Country Floors, 930 F.2d at 1061-62.

parties have filed cross-motions for summary judgment.  <u>See</u>
<u>Appelmans v. City of Phila.</u>, 826 F.2d 214, 216 (3d Cir. 1987).[2]

Mere denials in the Rule 56.1 statement of material facts
are not sufficient opposition to motions for summary judgment.
The non-moving party must come forward with some admissible
evidence.  "Although entitled to the benefit of all justifiable
inferences from the evidence, the nonmoving party may not, in the
face of a showing of a lack of a genuine issue, withstand summary
judgment by resting on mere allegations or denials in the
pleadings; rather, that party must set forth 'specific facts
showing that there is a genuine issue for trial,' else summary
judgment, 'if appropriate,' will be entered."  <u>U.S. v. Premises</u>

---

[2]  Cross-motions for summary judgment:

> are no more than a claim by each side that it
> alone is entitled to summary judgment, and
> the making of such inherently contradictory
> claims does not constitute an agreement that
> if one is rejected the other is necessarily
> justified or that the losing party waives
> judicial consideration and determination
> whether genuine issues of material fact
> exist.

<u>Transportes Ferreos de Venezuela II CA v. NKK Corp.</u>, 239 F.3d
555, 560 (3d Cir. 2001) (<u>citing</u> <u>Rains v. Cascade Indus., Inc.</u>,
402 F.2d 241, 245 (3d Cir. 1968)).  If review of cross-motions
for summary judgment reveals no genuine issue of material fact,
then judgment may be entered in favor of the party deserving of
judgment in light of the law and undisputed facts.  <u>See</u> <u>Iberia</u>
<u>Foods Corp. v. Romeo Jr.</u>, 150 F.3d 298, 302 (3d Cir. 1998)
(<u>citing</u> <u>Ciarlante v. Brown & Williamson Tobacco Corp.</u>, 143 F.3d
139, 145-46 (3d Cir. 1988)).

Known as 717 South Woodward St., Allentown, Pa., 2 F.3d 529, 533
(3d Cir. 1993) (quoting Fed. R. Civ. P. 56(e))(citations
omitted).

## IV. DISCUSSION

### A. Defendants' Motion for Summary Judgment as to Counts One, Two and Three

On Defendants' motion for summary judgment, the Court must
view the evidence in the light most favorable to Plaintiff.  From
that perspective, Defendants knew Plaintiff was suffering from a
painful gallstone attack requiring medical attention that caused
her final absences from work when they decided to terminate her.

#### 1.   Count One: NJLAD "Handicap" Discrimination

Under the NJLAD, it is unlawful discrimination for an
employer to fire a person on the basis of "handicap," or
disability, "[u]nless it can be clearly shown that a person's
disability would prevent such person from performing a particular
job."  N.J. Stat. Ann. § 10:5-29.1.  All forms of employment
discrimination against individuals with disabilities is
prohibited "unless the nature and extent of the disability
reasonably precludes the performance of the particular
employment."  N.J. Stat. Ann. § 10:5-4.1.  A person is
"handicapped" under the NJLAD if she is

> suffering from physical disability,
> infirmity, malformation or disfigurement
> which is caused by bodily injury, birth
> defect or illness . . . or from any mental,
> psychological or developmental disability

9

> resulting from anatomical, psychological,
> physiological or neurological conditions
> which prevents the normal exercise of any
> bodily or mental functions or is
> demonstrable, medically or psychologically,
> by accepted clinical or laboratory diagnostic
> techniques.

N.J. Stat. Ann. § 10:5-5(q).

> Unlike the ADA, the NJLAD "was intended to
> cover more than just 'severe' disabilities,"
> Olson v. General Electric Astrospace, 966 F.
> Supp. 312, 315 (D.N.J. 1997)(Fisher,
> J.)(citing Andersen v. Exxon Co., 89 N.J.
> 483, 446 A.2d 486 (1982)), and, accordingly,
> does not require that the handicap
> substantially limit a major life activity. In
> fact, the New Jersey Supreme Court has held
> that the statutory definition of
> "handicapped" is "very broad in its scope."
> Clowes v. Terminix Int'l, Inc., 109 N.J. 575,
> 593,(1988).

Santiago v. City of Vineland, 107 F. Supp. 2d 512, 547 (D.N.J.

2000).

Because Counts Two and Three address failures to accommodate

and retaliation, the Court construes Count One as a claim that

Defendants explicitly decided to fire Plaintiff because of her

"handicap," a disparate treatment claim.  See Tynan v. Vicinage

13 of Superior Court, 351 N.J. Super. 385, 397 (App. Div. 2002)

(NJLAD handicap discrimination claims can be disparate treatment

claims or failure to accommodate claims).  To establish a prima

facie case of disparate treatment under NJLAD, Plaintiff must

establish that (1) she was in the protected group, (2) she was

performing her job at a level that met her employer's legitimate

expectations, (3) that she nevertheless was fired, and (4) that the employer sought someone to perform the same work after she left.  See Clowes, 109 N.J. at 597.

In this case, it is undisputed that Plaintiff received a final warning about her attendance before she missed work on October 12, 2004.  It is also undisputed that this absence brought an intervening seven absences to Defendants' attention. Therefore, Plaintiff will be unable to prove an essential element of her prima facie case, that she was performing her job at a level that met Defendants' legitimate expectations.[3]

Nor has Plaintiff come forward with any evidence that the decision to terminate her was made because of her "handicap"[4] or that she was otherwise treated less favorably than non-disabled employees.  Therefore, the Court shall grant summary judgment to Defendants on Plaintiff's claim in Count One.  No reasonable

---

[3]  That same shortcoming does not afflict Plaintiff's claim for failure to accommodate, in Count Two, because she argues that her absence should have been excused as an accommodation for her disability.

[4]  Indeed, at her deposition, Plaintiff clearly indicated, during questioning by defense counsel, that she did not believe she was fired because of her disability. (Taylor Dep. at 208-210 in Def. Ex. C.) On questioning by her own attorney, Plaintiff indicated that she believed "the main reason" she was fired was because she was complaining about a coworker, but that she "was out on disability" was also a factor. (Taylor Dep. at 161.) Thus, even in the most generous view of Plaintiff's understanding of her termination, her absence, and not her disability, per se, was one factor in her termination.  That claim is actually a failure to accommodate claim, as articulated in Count Two of the Complaint and discussed below.

juror could find, on the record before this Court, that

Defendants treated Plaintiff differently than other employees

because of her handicap, on a disparate treatment theory.

        2.   <u>Counts Two & Three: Failure to Accommodate &
            Retaliation</u>

However, Plaintiff also alleges that Defendants

discriminated against her based on her "handicap" by failing to

accommodate her need to take time off from work, as required

under the NJLAD.  <u>See</u> N.J.A.C. 13:13-2.5.

> "The LAD does not specifically address
> reasonable accommodation, but our courts have
> uniformly held that the law nevertheless
> requires an employer to reasonably
> accommodate an employee's handicap." <u>Tynan v.
> Vicinage 13 of the Superior Court of N.J.</u>,
> 351 N.J. Super. 385, 396 (App. Div. 2002).
> Administrative regulations set out the
> specific requirements of the reasonable
> accommodation process mandated by the LAD. In
> brief, unless it would impose an undue
> hardship on the operation of the business,
> N.J.A.C. 13:13-2.5(b) requires an employer to
> make a "reasonable accommodation to the
> limitations of an employee . . . who is a
> person with a disability."

<u>Potente v. County of Hudson</u>, 187 N.J. 103, 110 (2006).  That

regulation further explains, in relevant part, that there are no

bright-line rules as to what constitutes a reasonable

accommodation.

> The determination as to whether an employer
> has failed to make reasonable accommodation
> will be made on a case-by-case basis.
>
>    1. Under circumstances where such
> accommodation will not impose an undue

12

hardship on the operation of an employer's business, examples of reasonable accommodation may include:

    i. Making facilities used by employees readily accessible and usable by people with disabilities;

    ii. Job restructuring, part-time or modified work schedules or leaves of absence;

    iii. Acquisition or modification of equipment or devices; and

    iv. Job reassignment and other similar actions.

2. An employer shall consider the possibility of reasonable accommodation before firing, demoting or refusing to hire or promote a person with a disability on the grounds that his or her disability precludes job performance.

3. In determining whether an accommodation would impose undue hardship on the operation of an employer's business, factors to be considered include:

    i. The overall size of the employer's business with respect to the number of employees, number and type of facilities, and size of budget;

    ii. The type of the employer's operations, including the composition and structure of the employer's workforce;

    iii. The nature and cost of the accommodation needed; and

    iv. The extent to which accommodation would involve waiver of an essential requirement of a job as opposed to a

13

> tangential or non-business necessity
> requirement.

N.J.A.C. 13:13-2.5(b).

To succeed on a failure to accommodate claim, a plaintiff must show that she made her employer aware, if only in plain English, of her need for a reasonable accommodation for a handicap and that the employer failed to engage in a search for an accommodation.

> Once such a request is made, "both parties have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith." . . . This process must identify the potential reasonable accommodations that could be adopted to overcome the employee's precise limitations resulting from the disability. Once a handicapped employee has requested assistance, it is the employer who must make the reasonable effort to determine the appropriate accommodation.
> To show that an employer failed to participate in the interactive process, a disabled employee must demonstrate: (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

Tynan, 351 N.J. Super. at 400-01 (citations omitted).

Plaintiff alleges that Defendants failed to accommodate her disability by failing to excuse her absence on October 12 or to provide her with a longer leave of absence to seek treatment for

her gallbladder.  Defendants argue that because they decided to
terminate Plaintiff before she requested time off, allegedly as
an accommodation for her "handicap," they cannot be liable for
failing to accommodate her handicap or for retaliating against
her for that request.

However, on Defendants' motion for summary judgment, the
Court must view the facts in the light most favorable to
Plaintiff.  She alleges that when she called out sick on October
12, she informed Virtua of her problems with her gallbladder and
that neither Ms. Cooper or Virtua intended to fire her at that
time as Ms. Cooper allegedly asked Plaintiff whether she would be
coming to work the following day.  Plaintiff contends that
Defendants decided to fire her only when she requested a longer
period of medical leave and that such a decision indicates an
unreasonable failure to accommodate and a termination in
retaliation for requesting an accommodation.  The undisputed
facts indicate that Defendants never engaged in an interactive
process with Plaintiff to accommodate her handicap, apparently
because they did not believe that need was genuine.  However,
this Court cannot determine the genuineness of Plaintiff's
request at this stage.  Viewing the facts in the light most
favorable to Plaintiff, the Court must, therefore, deny summary
judgment to Defendants on Plaintiff's failure to accommodate
claim in Count Two.  Further, a reasonable juror could find that

15

Defendants fired her because she opposed their failure to accommodate, as N.J. Stat. Ann. 10:5-12(d) requires.  Therefore the Court shall also deny Defendants' motion for summary judgment as to Count Three.

### B.    Cross Motions as to Counts Four & Five: Interference with FMLA Rights & Related Retaliation

Defendants claim that because they decided to fire Plaintiff before they became aware that her absence from work was due to a serious health condition, and began the process to terminate her employment, they cannot be liable under the FMLA for interference with Plaintiff's FMLA rights.  They point out that it is undisputed that Plaintiff had received a final warning prior to her final absence from work and argue that when they decided to terminate her they were unaware that she was suffering from a serious medical condition.

Plaintiff argues that qualified FMLA leave can never be used against an employee, even if she had many unexcused absences from work.  Plaintiff points out that as long as she notified the employer within a reasonable time of a medical emergency of her need for leave, as she alleges she did here, she cannot be fired for her absence from work.

> The Family and Medical Leave Act of 1993
> ("FMLA"), 29 U.S.C. § 2601, et seq., was
> enacted to provide leave for workers whose
> personal or medical circumstances necessitate
> that they take time off from work in excess
> of what their employers are willing or able
> to provide. Victorelli v. Shadyside Hosp.,

16

> 128 F.3d 184, 186 (3d Cir. 1997) (citing 29
> C.F.R. § 825.101). The Act is intended "to
> balance the demands of the workplace with the
> needs of families . . . by establishing a
> minimum labor standard for leave" that lets
> employees "take reasonable leave for medical
> reasons, for the birth or adoption of a
> child, and for the care of a child, spouse or
> parent who has a serious health condition."
> Churchill v. Star Enters., 183 F.3d 184, 192
> (3d Cir. 1999) (quoting 29 U.S.C. §
> 2601(b)(1),(2); S. Rep. No. 103-3 at 4).
>
> To present a claim under the FMLA, a
> plaintiff must show (1) she is an eligible
> employee under the FMLA, (2) defendant is an
> employer subject to the requirements of the
> FMLA, (3) she was entitled to leave under the
> FMLA, (4) she gave notice to the defendant of
> her intention to take FMLA leave, and (5) the
> defendant denied her the benefits to which
> she was entitled under the FMLA. Spurlock v.
> NYNEX, 949 F. Supp. 1022, 1033 (W.D.N.Y.
> 1996); Belgrave v. City of New York, 1999
> U.S. Dist. LEXIS 13622, 1999 WL 692034,
> (E.D.N.Y. Aug. 31, 1999), aff'd, 216 F.3d
> 1071 (2d Cir. 2000).

Parker v. Hahnemann Univ. Hosp., 234 F. Supp. 2d 478, 483-84

(D.N.J. 2002).

The Court shall deny summary judgment to Defendants on Count

Four and grant summary judgment to Plaintiff.  Under 29 U.S.C. §

2615(a)(1), an employer may not "deny the exercise of or the

attempt to exercise, any right provided [by the FMLA]."  Summary

judgment is not appropriate for Defendants on a claim that they

violated the FMLA because Defendants cannot terminate someone for

missing work when that absence was qualified FMLA leave, even

though, considering the facts favorable to Defendants, they made

17

the initial determination decision prior to learning that the absence qualified for FMLA leave.  Undisputed facts show that Plaintiff's final absence was a factor in her termination. Workers cannot be fired for notifying employers within a reasonable time of a health emergency and the need to take qualified FMLA leave.  This is so even if the absence from work is merely "the straw that broke the camel's back," and the leave-taking worker is an employee who could have been fired for performance reasons before taking the leave.[5]  Qualified leave is an entitlement and taking it cannot be a factor, no matter how small, in an adverse employment decision.

The parties do not dispute that Plaintiff was an eligible employee and that Virtua was an employer covered by the Act.  See 29 U.S.C. § 2611.  Nor do the parties dispute that Plaintiff was suffering from a serious health condition that would entitle her to leave under 29 U.S.C. § 2612(a)(1)(D).  That section provides that "an eligible employee shall be entitled to . . . leave [b]ecause of a serious health condition that makes the employee

---

[5]  The Court acknowledges that Defendant Cooper has submitted a declaration insinuating that Plaintiff's qualified absence was not a factor in the decision to terminate her, which directly contradicts Cooper's extensive deposition testimony on the subject. (Cooper Decl. ¶ 7.)  "When, as in the present case, the affiant was carefully questioned on the issue, had access to the relevant information at that time, and provided no satisfactory explanation for the later contradiction,. . . the subsequent affidavit does not create a genuine issue of material fact." Martin v. Merrell Dow Pharms., Inc., 851 F.2d 703, 70 (3d Cir. 1988).

unable to perform the functions of the position of such
employee."  Under the regulations, "[i]n all circumstances, it is
the employer's responsibility to designate leave, paid or unpaid,
as FMLA qualifying, and to give notice of the designation to the
employee . . . ." Conoshenti v. Public Service Elec.& Gas, 364
F.3d, 133, 142 (3d Cir. 2004) (emphasis added), quoting 29 C.F.R.
§ 825.208(a).  Under § 825.208(a)(1), "an employee giving notice
of the need for unpaid FMLA leave must explain the reasons for
the needed leave so as to allow the employer to determine that
the leave qualifies under the Act."  In addition, § 825.208(a)(2)
creates a lenient standard for what constitutes FMLA notice under
the regulations, as an employee giving notice of the need for
unpaid FMLA leave "does not need to expressly assert rights under
the Act or even mention the FMLA to meet his or her obligations
to provide notice."  29 C.F.R § 825.208(a)(2).  Rather, the
employee need only "state a qualifying reason for the need for
leave."  Id.  The lenient standard is supported by case law in
this District and others.[6]  The burden on the employee to give

---

[6]  See Viereck v. City of Gloucester City, 961 F. Supp. 703
(D.N.J. 1997)(employee telling employer that she was in a car
accident, sustained injuries, was hospitalized and would not be
able to return to work due to her medical condition satisfied the
notice requirement); Price v. City of Fort Wayne, 117 F.3d 1022,
1025-26 (7th Cir. 1997)(holding that leave request specifying
medical need and attaching doctor's note satisfied FMLA notice
requirement); Spangler v. Federal Home Loan Bank of Des Moines,
278 F.3d 847 (8th Cir. 2002)(holding that a jury could reasonably
construe that the two-word message "depression again" was
sufficient notice to employer of employee's desire for FMLA

FMLA notice is not onerous or overly-technical and it is usually easily satisfied.

In general, an eligible employee is entitled to a total of 12 workweeks of leave during any 12-month period if she is suffering from a serious health condition that makes the employee unable to perform the functions of the position of such employee. 29 U.S.C. § 2612 (a)(1)(D). Notice is required for "foreseeable" absences. See 29 U.S.C. § 2612 (e)(2). However, "where an employee's need for FMLA leave is unforeseeable, the employee need only provide her employer with notice sufficient to make the employer aware that her absence is due to a potentially FMLA-qualifying reason." Gay v. Gilman Paper Co., 125 F.3d 1432, 1436 (11th Cir. 1997). Although there is a general requirement that employees notify employers of the need to be absent for treatment at least thirty days in advance of the absence, in those situations where such notice is not possible, employees should provide notice "as is practicable." 29 U.S.C. § 2612 (e)(2)(B).

In this case, it is undisputed that Plaintiff informed defendants of her medical reasons for her absence within two days of the absence. Under the FMLA's implementing regulations,

> "As soon as practicable" means as soon as both possible and practical, taking into account all of the facts and circumstances in

leave).

20

> the individual case. For foreseeable leave
> where it is not possible to give as much as
> 30 days notice, "as soon as practicable"
> ordinarily would mean at least verbal
> notification to the employer within one or
> two business days of when the need for leave
> becomes known to the employee.

29 C.F.R. § 825.302(b). Even though Plaintiff's leave was not

foreseeable, she still complied with this requirement and,

viewing the facts in the light most favorable to defendants,

provided notice to her employer that her leave was health-related

before her shift began and that it was related to a serious

medical condition within two days of her absence from work.

It is undisputed that Plaintiff was suffering from severe

gallbladder problems that required surgery when she called out

sick on October 12[7], but Defendants did not learn of this until

after they decided to fire her for many absences, including the

October 12 absence. Defendants immediately began implementing

their decision to fire Plaintiff while she, knowing her

termination was imminent, began processing her request for leave

---

[7] Defendants merely noted in their opposition to
Plaintiff's statement of undisputed material facts that they do
not have sufficient information to determine whether Plaintiff
was actually suffering from those ailments. However, at the
summary judgment stage, such a rote denial is not sufficient to
create a genuine issue of material fact when there is ample,
admissible evidence that Plaintiff was suffering from a serious
medical condition that precluded her work at that time.
Defendants had not only Plaintiff's word for it on October 12 and
13, but also Plaintiff's doctor's note on October 14 describing
her serious condition and need for follow-up scheduling of gall
bladder surgery, see infra.

time.

It is clear, however, that the decision to fire Plaintiff was not consummated when Defendants learned that she was suffering with a serious medical condition.  They could not, consistent with the FMLA, proceed to fire Plaintiff once they obtained notice that she was seeking medical leave.  It is undisputed that she contacted Virtua's human resources department on October 13 to request information about leave and that at some point prior to her official termination, and not later than October 14, Defendants were put on notice that Plaintiff was claiming her illness kept her out of work and received Plaintiff's doctor's note.  Indeed, in Defendants' statement of undisputed material facts, they note that on October 14 Plaintiff provided Cooper with a note from her doctor that indicates Plaintiff should be excused from work for "severe abdominal plain and diarrhea/colitis due to gallstones" and that she had an appointment with a surgeon eleven days later to schedule surgery. Viewing the facts in the light most favorable to Defendants, Plaintiff has established that they denied her qualified leave in violation of the Family and Medical Leave Act and that she is entitled to summary judgment on Count Four.

Further, because a reasonable juror could find, viewing the facts in the light favorable to Plaintiff, that Defendants retaliated against her for requesting leave, the Court shall deny

Defendants summary judgment on Count Five.  On the other hand,
viewing the facts in the light most favorable to Defendants, a
reasonable juror is not compelled to find that Defendants
retaliated.  Thus, the Court shall also deny summary judgment to
Plaintiff on her retaliation claim, and Count Five remains to be
adjudicated.

### C.   Cross Motions for Summary Judgment on Count Six

In Count Six of her Complaint, Plaintiff alleges that
Defendants failed to honor their written policy of providing
unpaid medical leave for up to one year to employees with at
least six months of employment who are absent for more than seven
days in a year.  This leave of absence policy is allegedly
separate from Virtua's FMLA obligations and policies and,
therefore, the Court shall refer to it as Virtua's "non-FMLA
leave" policy.  In her motion for summary judgment, Plaintiff
argues that Defendants violated her employment rights under New
Jersey law, as articulated in Woolley v. Hoffman-La Roche, 99
N.J. 284, 285-86, modified, 101 N.J. 10 (1985), by failing to
permit her to utilize the non-FMLA leave.  Defendants oppose,
arguing that because she was terminated prior to requesting
medical leave, she was no longer entitled to such a benefit.

> In Woolley, [the New Jersey Supreme] Court
> held that "absent a clear and prominent
> disclaimer, an implied promise contained in
> an employment manual that an employee will be
> fired only for cause may be enforceable
> against an employer even when the employment

> is for an indefinite term and would otherwise
> be terminable at will." Id. at 285-86
> Succinctly stated, "Woolley modifies the
> nature of the employment relationship by
> imposing an obligation on the employer to
> abide by the terms of the manual." Wade v.
> Kessler Inst., 172 N.J. 327, 340, 798 A.2d
> 1251 (2002).

Leodori v. Cigna Corp., 175 N.J. 293, 303-04 (2003). "Under

Woolley and its progeny, courts will enforce a manual's

provisions related to both the grounds for termination and the

procedures to be followed when terminating an employee." Wade v.

Kessler Inst., 172 N.J. 327, 340 (2002).

Although the non-FMLA leave policy generally required thirty

days notice before an employee could use the benefit, Defendants

do not dispute that the policy also provided that, in case of

emergencies, such notice would not be required.

Thus, Plaintiff's motion for summary judgment as to this

Count stands in much the same posture as the motion for summary

judgment on the failure to provide FMLA leave.  Viewing the facts

in the light most favorable to Defendants, Plaintiff requested

leave after Defendants had decided to fire Plaintiff but before

they implemented that decision.  Thus, she was an employee

entitled to leave at the time she allegedly requested it, two

days after she awoke with an emergency medical situation.

Under Woolley, sophisticated employers like Virtua are bound

by the promises they make to their workers in employee handbooks,

unless the employers make clear that those promises are not

binding.  However, neither party has submitted Virtua's

24

employment policy manual to the Court.  In examining whether a Woolley claim may proceed, the Court must determine if the manual creates a reasonable expectation amongst Virtua's employees that they will not be fired for requesting medical leave, even if they are not entitled to such leave under the FMLA.  See Witkowski v. Thomas J. Lipton, 136 N.J. 385, 393 (1994) ("the basic test for determining whether a contract of employment can be implied turns on the reasonable expectations of employees.").  The Court also must examine whether the manual has a "clear and prominent disclaimer" indicating that Virtua does not intend to be bound by its promises.  See Woolley, 99 N.J. at 285-86.

Plaintiff's claim is a contractual one and the Court cannot determine what the contract means, as a matter of law, without examining the contract.  Therefore, all parties have failed to meet their burdens of showing that there is no genuine issue of material fact entitling them to summary judgment on Count Six.

**VI.  CONCLUSION**

For the foregoing reasons, the Court shall deny Defendants' motion for summary judgment on Counts Two, Three and Four; deny both parties' motions on Counts Five and Six; grant Defendants' motion on Count One; and grant Plaintiff's motion on Count Four. An accompanying Order shall be entered.


**June 25, 2007**                          **s/ Jerome B. Simandle**
Date                                        Jerome B. Simandle
                                            U.S. District Judge